## Case No. 4,967.

FOSTER v. CALLAWAY COUNTY.

[3 Dill. 200; 1 1 Cent. Law J. 203.]

Circuit Court, W. D. Missouri. 1874.2

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
2 [Affirmed in 93 U. S. 567.]

J. D. Stevenson and Ewing & Smith, for plaintiff.

O. Guitar, T. C. Reynolds, Lay & Belch, Jeff. Jones, and Boulware & Flood, for the county.

PER CURIAM (DILLON, Circuit Judge, and KREKEL, District Judge, concurring). On the 10th day of March, 1859, the general assembly of the state of Missouri passed an act authorizing the organization of a railroad company under the name of the Louisiana and Missouri River Railroad Company, with a capital stock of three million dollars, and granting it power to "mark out, locate, and construct a railroad from the city of Louisiana, in the county of Pike, by the way of Bowling Green, in said county, to some suitable point on the North Missouri Railroad, intersecting said road between the southern limits of the town of Wellsville, in Montgomery county, and the northern limits of the town of Mexico, in Audrain county, thence to the Missouri river, at the most eligible point on the line the most suitable and advantageous as regards distance, grade, cost of road, and permanent value of same."

In this act of incorporation power was given "the county court of any county in which any part of the route of said railroad may be, to subscribe to the stock of said company, and to invest its funds in the stock of said company, and issue the bonds of such county to raise funds to pay the stock thus subscribed, and to take proper steps to protect the interests and credit of the county." No popular vote was required as a condition to the exercise of this power by the county courts. Before any subscription by Callaway county to the stock of the company, a number of the surveys of the route of the road had, according to the agreed statement of facts, been made, some of them running through Callaway county and others through Boone and Howard, and not touching any part of Callaway county. On the 16th day of January, 1868, the county court of Callaway county appointed Thomas B. Harris "commissioner and agent of the county of Callaway to take stock in and subscribe to the capital stock of the Louisiana and Missouri River Railroad Company the sum of five hundred thousand dollars, being five thousand shares of one hundred dollars each, of said capital stock, said subscription to be paid by the issue of county bonds, * * * as may be required by said company during the progress of the construction of said railroad from some point west or southwest of the North Missouri Railroad, on either the Wellsville or Jefftown routes, as surveyed through said county through the city of Fulton (in said county), and by way of New Bloomfield (in said county), as near as practicable to the Missouri river." This subscription of five hundred thousand dollars by the commissioner thus appointed by the county was made by him on the books of the company on the same day (January 16, 1868), as appears by a recital on the records of the county. Three smaller subscriptions were afterwards made by the order of the county court to the stock of the Louisiana and Missouri River Railroad Company. The Louisiana and Missouri River Railroad Company, it is agreed, subsequently to the said 16th day of January, 1868, "located and built the road now operating, running from Louisiana, in Pike county, to Mexico, in Audrain county, and located and graded throughout, and partially completed, the road running from Mexico to Glasgow (in Howard county), on the Missouri river, and completed the road now running and operated from Mexico, in Audrain county, by way of Fulton, in Callaway county, through Callaway county, to a point therein on the Missouri river opposite Jefferson City."

The constitution of the state of Missouri in force at the time of the passage of the act of incorporation of the Louisiana and Missouri River Railroad Company, on the 10th day of March, 1859, contained no provision restraining the legislature from authorizing subscriptions to railroads in any manner it saw fit, but the present constitution, which went into effect on the 4th day of July, 1865, contains this provision: "The

general assembly shall not authorize any county, city or town to become a stockholder in. or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall consent thereto."

In reference to laws in force at the time of the going into effect of the present constitution of the state, it has this provision: "All statute laws of the state now in force, not inconsistent with the constitution, shall continue in force until they shall expire by their own limitations, or be amended or repealed by the general assembly."

In reference to the subject and title of laws, the present constitution has this provision: "No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title; but if any subject embraced in an act be not expressed in the title, such act shall be void only as to so much thereof as is not so expressed."

A further provision of the constitution is: "No act shall be revised or re-enacted by mere reference to the title thereof, nor shall any act be amended by providing that designated words thereof shall be struck out and others inserted in lieu thereof; but in every such case, the act revised or re-enacted, or the act or part of the act amended, shall be set forth and published at length, as if it were an original act."

With these constitutional provisions in force, the legislature, on the 24th day of March, 1868 (Laws 1868, p. 97), which was after the subscription of $500,000 by the defendant, undertook to amend the original act of incorporation of the Louisiana and Missouri River Railroad Company, by increasing its capital stock, fixing the terminus of the road, authorizing the location and construction of a branch road, and granting power to carry into effect the provisions of the act. It may be proper, although not strictly necessary, to notice here one question discussed by counsel and by the state supreme court in the Saline county case (State v. County Court Saline Co., 51 Mo. 350), as to whether the act of March 24, 1868, is an amendatory act; and as to this point, it seems to us only necessary to state that the amendment of 1868, aside from the title, repeats nearly the whole of the original charter, verbatim, embodying in it new provisions only, thus literally complying with the constitutional provision cited, requiring an amendment to be "set forth and published at length, as if it were an original act."

Looking thus at the amendatory act, it cannot, as we think, be held that the legislature undertook thereby to create by special act a new corporation, which, under the constitution (article 8, § 4), it was prohibited from doing.

As to the constitutional provision requiring that an act shall not relate to more than one subject, and that expressed in its title, our opinion is that the mischief sought to be provided against was the passage of acts having no title at all, a false title, or mixing up matters incongruous and having no relation to each other. The whole of the amendatory act embraces but one subject when viewed with reference to the matter in hand, viz.: the building of a railroad, and this is sufficiently expressed in the title. With the question of the validity of the amendatory act, so far as it relates to counties south of the Missouri river, we have no concern, and pass no opinion, having to deal here with Callaway county, on the north side of the river, and in which a part of the Louisiana and Missouri River Railroad might, by the original charter of March 10, 1859, be located and built.

The question as to whether the legislature in 1868 had authority to amend the charter of 1859 would seem to be settled by the constitutional provision above cited in respect to amending statute laws, as expounded by the supreme court of Missouri in the case of State v. Cape Girardeau & S. L. R. Co., 48 Mo. 468, and the late case of State v. Greene Co., 54 Mo. 540. But we do not mean to be understood as holding that the power of amendment of charters would exist to the extent of conferring, by way of amendment, powers prohibited by the express provisions of the constitution of 1865.

Callaway county is undoubtedly on the line of the railroad as contemplated in the original charter, and hence the county court had the right to subscribe, provided any part of the road was within it. At the time of the county's subscribing the $500,000 stock under the original charter and prior to its amendment, some of the lines of the route of the railroad had, in fact, been run through Callaway county, as admitted by the agreed statement of facts.

The order of subscription speaks of paying out the bonds as the work of construction progresses through the county. The supreme court of Missouri has so repeatedly decided, under provisions such as those contained in the charter of the Louisiana and Missouri River Railroad, that the county courts had the right, unaffected by the constitution of 1865, to subscribe without submitting the question to the people, that it is not necessary to dwell upon the point, or do more than to refer to the late case of Smith v. Clark Co., 54 Mo. 58, in which the former decisions are cited and affirmed; and to the still more recent case of State v. Greene Co., 54 Mo. 540.

Another question discussed by counsel relates to the effect of the recital in the bonds, which were made payable to the "Louisiana and Missouri River Railroad Company," or bearer, that the same were issued in conformity to the act of the 10th day of March, 1859, and the amendatory act of March 24,

1868. Under our view, the amendatory act did not create a new corporation, and we are inclined to think that it did not take away the power of the county court to subscribe for the stock as conferred in the original charter of the company, and that it should not be held to do so as respects the bona fide holder of bonds which purported on their face to be issued under the authority of the charter. And this view finds a very strong support in the decisions of the supreme court of the state affirming the power of the counties along both the main line and branches, to subscribe for the stock under the provisions of charters antedating the present constitution, in the Macon, Sullivan and Greene county cases.

As to the amendatory act calling the road running through Callaway county the "South Branch," after the main subscription had been made to the Louisiana and Missouri River Railroad to aid in building a road surveyed and afterwards built through Callaway county, this cannot affect the bona fide holders of the bonds.

From the evidence and the original charter of 1859, it would appear that the road, as now built through Callaway county, was the main line, or, at least as much the main line as the line farther west, which does not touch Callaway county. The limitation in the charter of 1859 of the capital stock to three millions, scarcely sufficient to build a road of a hundred miles, the direction of the road from Louisiana by way of Bowling Green, crossing the North Missouri Railroad west of Wellsville and east of Mexico, thus narrowing down as it were the objective points, all indicate that the nearest place on the Missouri river was in the minds of the originators of the road, as well as of the legislature when it passed the charter.

We have adverted to the nature and effects of the amendatory act because these subjects have been largely discussed by counsel, and not because they are absolutely necessary to reach a conclusion in the present case. We place our judgment on this ground: The plaintiff is a bona fide holder of the bonds issued by the county. These bonds recite that they are issued by virtue of the power conferred upon the county by the original charter of the company of March 10, 1859, as amended by the act of March 24, 1868. The act of March 10th, thus recited, did give the power, and that power is not taken away by the amendatory act of 1868, but according to the decisions of the supreme court of the state, above mentioned, remains unaffected by the provisions of the constitution of 1865, requiring a popular sanction to such subscriptions. All of the subscriptions were made to the "Louisiana and Missouri River Railroad Company," the original corporation, and not to the branch mentioned in the amendatory act.

As there was legislative power in the county to make the subscription and to issue the bonds, and as the county court has exercised this power and issued the bonds which have found their way into the hands of the plaintiff, a bona fide holder for value, the decisions of the supreme court of the United States conclude the county from making the defense here attempted, and this whether the amendatory act be or be not void, and whether the county was or was not authorized to transfer the subscription to what is called the "South Branch," or to apply the money raised by the sale of the bonds to the building of that branch.

It may be further remarked that the record of the county court shows that the proceeds of the bonds issued by the county were applied to the building of a road substantially along the line to which the subscription was made on the 16th day of January, 1868; that the work progressed thereby and the bonds issued from time to time; that the minor changes in the line of the road were assented to by the county court; that the road passes through the entire body of the county, and is in full operation, and that two years interest and part of the principal of the bonds had been paid. Under these circumstances it seems to us that no one, familiar with the decisions of the supreme court of the United States upon the general question, and of the supreme court of Missouri to the effect that the power of the county court to subscribe without a vote of the people survived, unaffected by the constitution of 1865, can reasonably anticipate any but one result.

The case, in the aspect in which it is viewed by the defendant's counsel, presents some new questions, and it is certainly one of great moment to the county, as it involves in its consequences a liability of over half a million of dollars. We are relieved of much of the weight of responsibility we would feel by the consideration that our judgment is not final, and that the record can so easily be put in a shape to present the merits of the case for the decision of the supreme court of the United States. In our opinion the plaintiff is entitled to judgment.

Judgment accordingly.